UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
V.                              )        DOCKET NO. 08 CR-10101-JLT
                                )
EMMANUEL MERVIL                 )

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States Government respectfully submits this memorandum in connection with the upcoming sentencing hearing on this matter, currently scheduled for June 17, 2013.  As discussed below, the Government agrees with Probation's conclusions in the Pre Sentence Report (the "PSR").  As an offender sentenced under 18 U.S.C. § 922(g)(1) with two prior felony convictions, Defendant's advisory guideline range, with acceptance of responsibility, is 63-78 months [PSR ¶ 76].  The Government believes that a sentence of 65 months' imprisonment, on the lower end of the Guideline range, three years' supervised release, and a mandatory $100 special assessment is an appropriate disposition to this matter.

## DEFENDANT'S CRIMINAL OFFENSE

The Government incorporates the facts as stated in the PSR, which, as written, are uncontested.  The Government sets forth briefly the relevant background of Defendant's offense.

On October 14, 2007, at about 4:30 p.m., Boston Police Department received a 911 call from Massachusetts State Police,

1

who had a woman on their 911 line.  The female caller reported that she was the victim of a domestic incident involving a man, Emmanuel Mervil, with a firearm.  The female was calling from 17 Hilton St. in Hyde Park, MA and several units were dispatched to this location.

Officers Gorman and Moscaritolo were the first on the scene, followed shortly by Officers Kilduff and O'Keefe. While O'Keefe went around the rear of the house, Gorman, Moscaritolo, and Kilduff approached the front door.  A distraught and crying female answered the door and informed the officers that Mervil was upstairs.  At this time, one of the officers saw Mervil heading up the stairs to the second floor.  The officers followed Mervil upstairs to the second floor landing where two adults informed officers that Mervil had continued to the third floor.

Officers Kilduff and Moscaritolo headed up the stairway to the third floor.  At this time, Officer O'Keefe, who was at the rear of the house, observed Mervil attempting to exit the house through an open third floor window.  Officer O'Keefe announced his presence to Mervil and ordered him to stop and put up his hands.  Upon Officer O'Keefe's command, Mervil reentered the house through the third floor window.

The stairway leading to the third floor entered the middle of a front to back hallway.  When Officers Kilduff and Moscaritolo were halfway up the stairs, they observed Mervil

2

moving from the front of the house to the rear, clutching a handgun in one hand.  Upon arriving in the hallway of the third floor landing, the officers witnessed Mervil near an open window in the back bedroom.  Both officers drew their guns, went to the threshold of the room and ordered Mervil to drop his gun.  After they repeated the order several times, Mervil dropped the gun behind a bookcase.  Officers then ordered Mervil to the ground but he refused and had to be subdued. As the officers escorted Mervil outside the house, he told the female caller, "you fucked up now" and "you're done now bitch."

After Mervil was removed from the residence, the female gave her statement to the police.  She stated that prior to the officers' arrival, she and Mervil had been arguing.  According to the female, she often stayed with Mervil on the first floor.  She stated that she and Mervil had been arguing and that Mervil pulled out a gun, chambered a round, pointed the gun at her and threatened, "I can kill you right now."  At this time, she used her cell phone to dial 911, until Mervil disconnected the call.

Officers later recovered the firearm which Mervil had been holding and discovered that it was loaded with three 9 mm rounds in the magazine and one round in the chamber.  Upon further inspection, it was ascertained that the firearm was a 9mm Smith and Wesson, serial number VJF8239.

During recovery of the firearm, officers also located an

"Out-Calls Register" with telephone numbers, names of clients, and amounts of money received from those clients. Additional information contained in the register led officers to believe that the register was used for the purpose of the record keeping of prostitutes.  Officers further located, in plain view, a black plastic bag containing $19,000 cash. Officers also recovered an additional $1,834 in U.S. currency from Mervil's person.

Following this incident, Mervil was charged with kidnaping, assault with a dangerous weapon (firearm), and being a felon in possession of a firearm.  Mervil was released on bail on November 30, 2007 following his arraignment in West Roxbury District Court.  On January 22, 2008, Mervil was indicted and charged in the Suffolk Superior Court with possession of a firearm, assault with a dangerous weapon, and intimidating a witness.  He then defaulted on April 17, 2008.  On April 30, 2008, Mervil was indicted in the United States District Court with being as previously convicted felon in possession of a firearm.  A warrant for Mervil's arrest was issued.

On March 3, 2012, Mervil was located by a deputy from the U.S. Marshal's Service as he exited a Residence Inn motel in Norwood, MA.  Mervil stated that his name was "Manny" but then notified law enforcement that his true name was Emmanuel Mervil. Following this arrest, officers found four driver's licenses in various names; two social security cards in various names; two

4

birth certificates in various names; $3,000 in U.S. currency; four cell phones and chargers; and several pieces of personal property (jewelry).

## GOVERNMENT'S SENTENCING RECOMMENDATION

On January 7, 2013, Emmanuel Mervil entered a guilty plea on the above charge, a single count charging Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1).  The Advisory Guidelines ("Guidelines"), as determined by Probation, recommends a sentence of 63-78 months [PSR ¶ 76].  The Government agrees with this determination and believes that a sentence of 65 months' imprisonment, on the lower end of the Guideline range, three years' supervised release, and a mandatory $100 special assessment is merited.

### A.    **The Applicable Sentencing Guidelines**

#### 1.    Defendant Used or Possessed the Firearm in Connection With Another Felony Offense

Pursuant to the Sentencing Guidelines § 2K2.1, having sustained at least two felony conviction for crimes of violence or controlled substance offenses prior to the instant offense, [PSR ¶¶ 31, 32], Defendant's base offense level is 24.  However, in the instant matter, Defendant not only possessed a firearm as a convicted felon, but Mervil used such firearm in an assault. The victim stated in her interview, that Mevril pointed the firearm in question at her and threatened, "I could kill you now." [PSR ¶¶ 10, 20]. Pursuant to U.S.S.G. § 2K2.1(b)(6)(B), a

5

4-level enhancement is applied for Defendant's use of the firearm
in connection with the above assault, bringing the adjusted
offense level to a subtotal of 28.

   2. <u>Defendant's Acceptance of Responsibility</u>

  Defendant has demonstrated acceptance of responsibility for
the violation of 18 U.S.C. § 922(g)(1), and has been granted a 3-
level reduction in his offense level pursuant to § 3E1.1(a) and
§ 3E1.1(b). With Defendant's acceptance of responsibility,
Defendant's total adjusted offense level is 25.

   3. <u>Defendant Has Two Prior Felony Convictions for</u>
     <u>Crimes of Violence or Controlled Substance</u>
     <u>Offenses</u>

  Prior to his arrest for the instant offense, Defendant, age
31, was convicted on two prior occasions which include both drug-
related offenses and crimes of violence. [PSR ¶¶ 31-32].
Defendant's criminal history begins at the age of 21, when
Defendant was convicted of possession with intent to distribute a
Class B controlled substance.  While awaiting resolution for the
prior offense, Defendant sustained convictions for resisting
arrest and assault and battery on a police officer.  These
convictions give Defendant a criminal history category of II.

  With an adjusted offense level of 25 and a criminal history
of II, the recommended Guideline Range is 63-78 months'
imprisonment.

4.   <u>Defendant's Obstruction of Justice</u>

Pursuant to § 3C1.1, the Government *could* argue for a further enhancement of Defendant's offense level because Defendant willfully obstructed or impeded the administration of justice with respect to the prosecution of the instant offense. Defendant was originally arrested by Boston Police Department officers on October 14, 2007.  He was then released on bail on November 30, 2007 and defaulted on April 17, 2008  For the next four years, until his arrest on March 3, 2012, Defendant lived under various other names for the sole purpose of evading arrest and prosecution for the instant offense.[1]

If the Government were to argue for an obstruction of justice enhancement, a two-level enhancement would be applied, bringing the adjusted total offense level to 27 and a recommended Guideline Range of 78-97 months' imprisonment.  The Government, however, has chosen not to do so at this time.

**B.   <u>The Instant Offense</u>**

Possession of a firearm by a felon is a serious offense.  The offender has already shown a disregard for the law and arming himself with a firearm is potentially an extremely dangerous situation.

---

[1] Defendant reported to the U.S. Probation Department, as reflected in the PSR ¶ 60, that he "always received [medical] treatment under a different name because he was afraid of getting arrested."

In the instant matter, Defendant placed not only the victim of the domestic assault in fear for her life, but threatened the safety of the responding officers and the greater Boston community by attempting to flee with the loaded weapon in hand. A sentence of 65 months' imprisonment, the lower end of the Guideline Range, is warranted to apprise Defendant of the impact his conduct had on the female victim, as well as the arresting officers.

**C.    Sentencing Factors Under 18 U.S.C. § 3553(a)**

18 U.S.C. § 3553(a) requires a sentencing court to consider specific, enumerated factors when determining an appropriate sentence.  These factors include: 1) "the nature and circumstances of the offense and the history and characteristics of the defendant" and 2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant.

1.    The History and Characteristics of the Defendant

The Court has the benefit of the PSR to examine Defendant's criminal history.  Defendant has two prior felony convictions stemming from actions he took at the age of 21, both of which are crimes of violence or controlled substance offenses.  As given in

8

the PSR, Defendant has convictions for possession with intent to distribute a controlled Class B substance [PSR ¶ 31]; and resisting arrest and assault and battery of a police officer. [PSR ¶ 32].  Defendant has shown a predilection for committing crimes of violence as well as a disregard for the law.

As such, the Government believes that a sentence of 65 months' imprisonment, the lower end of the Guideline range, is merited.

2.   <u>The Nature and Circumstances of the Offense</u>

The instant offense is an example of a brazen undertaking by the Defendant.  Having been previously convicted of a number of felonies, Defendant was well aware that he, as a felon, was prohibited from possessing a firearm.

However, despite this awareness, Defendant willingly and knowingly possessed a firearm.  Defendant further loaded a round into the chamber, with three more in the magazine.  Defendant did this in the presence of the victim and used the same loaded gun to threaten her safety. Loading a firearm, brandishing it at another person, and threatening to kill such other person are all actions consistent with an intent to fire the weapon.  Defendant put the safety of the victim at risk and caused her significant terror by placing her in fear for her life.

Additionally, when police arrived, Defendant attempted to flee the scene while still carrying the loaded handgun.

9

Defendant was initially nonresponsive to the Officers' commands to drop the gun.  The Officers were placed in a dire position. Defendant's actions created a threat to the safety and lives of Officers Kilduff and Moscaritolo, as well as to the community. Such threats to the safety of law enforcement and the community at large cannot be tolerated.

        3.   The Sentence Imposed Must Reflect the Seriousness of the Offense

18 U.S.C. § 3553(a)(2)(A) further directs a sentencing court to consider the need for the sentence to reflect the seriousness of the offense committed.  The crime of possessing a firearm after having previously been convicted as a felon is a serious offense by itself.  Add to that the fact that the gun was loaded, that it was used to threaten a woman's life, and that the Defendant attempted to flee from law enforcement officers while still carrying the loaded firearm and the crime becomes a very serious offense.  Any sentence less than 65 months' imprisonment, would not adequately reflect the serious nature of the Defendant's criminal conduct in this matter.

        4.   The Sentence Must Promote Respect for the Law

Defendant, convicted of not one but two prior felonies, knowing his action to be illegal, willfully violated by possessing a dangerous weapon, a firearm.  Further, Defendant has attempted to flee twice: the first time from the law enforcement officers on the day he was arrested, and the second time when he

10

was released on bail and hid his identity to escape from prosecution and evade future arrest.  Defendant has, thus, shown an indifference to the law. While Defendants has demonstrated an acceptance of responsibility for the offense [PSR ¶¶ 26-27], this is adequately reflected in the Government's recommended sentence of 65 months, a recommendation towards the lower end of the Guideline range.  Anything less than the Guideline recommendation will not promote respect for the law.

     5.   <u>The Sentence Must Provide Just Punishment for the Offense, Afford Adequate Deterrence to Criminal Conduct, and Protect the Public from Further Crimes of the Defendant</u>

Adherence to the recommended Guideline sentence will serve as an adequate deterrent to similar criminal behavior and justly punish Defendant for his actions. Defendant has two prior felony convictions for drug-related offenses or crimes of violence.  His instant offense involved the possession and threatened use of a dangerous weapon.  Mervil has shown himself to be prone to violence in the past and such violent tendencies have not been curbed.  The public needs to be protected from further violent actions by the Defendant and a sentence of 65 months is adequate to accomplish this.

<b><u>CONCLUSION</u></b>

On October 14, 2007, Defendant, Emmanuel Mervil, a convicted felon, possessed a loaded firearm in violation of 18 U.S.C. § 922(g)(1).  For the above reasons, this Court should sentence

11

Defendant to 65 months' imprisonment, on the lower end of the Guideline range, three years' supervised release, and a mandatory $100 special assessment.

                              Respectfully submitted,

                              CARMEN M. ORTIZ
                              United States Attorney

                        By:   /s/ **Kenneth G. Shine**
                              KENNETH G. SHINE
June 14, 2013                 Assistant U.S. Attorney
                              (617) 748-3686

CERTIFICATE OF SERVICE

     This is to certify that I have this day served upon counsel of record a copy of the foregoing document by electronic filing notice.

                              /s/ ***Kenneth G. Shine***
                              Kenneth G. Shine
                              Assistant U.S. Attorney

12